## STATE OF CONNECTICUT *v.* KENYA OMARI BROWN (SC 15542)

Callahan, C. J., and Borden, Norcott, Palmer and Peters, Js.

Argued May 1—officially released August 12, 1997

*Robert Sullivan*, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *John Smriga*, assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The issue in this certified appeal is whether the trial court was required by General Statutes § 54-82m[1] and Practice Book §§ 956B, 956C and

[1] General Statutes § 54-82m provides: "Rules re speedy trial to be adopted by judges of Superior Court effective July 1, 1985. In accordance with the provisions of section 51-14, the judges of the Superior Court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant,

956D,[2] to dismiss the information against the defendant, Kenya Omari Brown, because he was not brought to trial within the time limits set forth in §§ 956B and 956C

or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

[2] Practice Book § 956B provides: "—Time Limitations

"(a) Except as otherwise provided herein and in Sec. 956C, the trial of a defendant charged with a criminal offense during the period from July 1, 1983, through June 30, 1985, inclusive, shall commence within eighteen months from the filing of the information or from the date of the arrest, whichever is later.

"The trial of such defendant shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of Gen. Stat., § 54-82c.

"(b) Except as otherwise provided herein and in Sec. 956C, the trial of a defendant charged with a criminal offense on or after July 1, 1985, shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later.

"The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of Gen. Stat., § 54-82c.

"(c) If an information which was dismissed by the trial court is reinstated following an appeal, the time for trial set forth in paragraphs (a) and (b) shall commence running from the date of release of the final appellate decision thereon.

"(d) If the defendant is to be tried following a mistrial, an order for a new trial, an appeal or collateral attack, the time for trial set forth in paragraphs (a) and (b) shall commence running from the date the order occasioning the retrial becomes final."

Practice Book § 956C provides: "—Excluded Time Periods

"The following periods of time shall be excluded in computing the time within which the trial of a defendant charged by information with a criminal offense must commence pursuant to Sec. 956B:

"(a) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to:

"(1) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

"(2) delay resulting from trial with respect to other charges against the defendant;

"(3) delay resulting from any interlocutory appeal;

and his trial did not commence within thirty days of his motion for a speedy trial pursuant to § 956D, due to the fact that, during the thirty day period, his attorney

"(4) the time between the commencement of the hearing on any pretrial motion and the issuance of a ruling on such motion;

"(5) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the judicial authority;

"(6) delay resulting from any proceeding under Gen. Stat., §§ 17-155y (i), 19-484, 19-497, 54-56e, 54-56g, 54-56m or any other pretrial diversion program authorized by statute.

"(b) Any period of delay resulting from the absence or unavailability of the defendant, counsel for the defendant, or any essential witness for the prosecution or defense. For purposes of this paragraph, a defendant or any essential witness shall be considered absent when such person's whereabouts are unknown and cannot be determined by due diligence. For purposes of this paragraph, a defendant or any essential witness shall be considered unavailable whenever such person's whereabouts are known but his or her presence for trial cannot be obtained by due diligence or he or she resists appearing at or being returned for trial.

"(c) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

"(d) A reasonable period of delay when the defendant has been joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

"(e) Any period of time between the date on which a defendant or counsel for the defendant and the prosecuting authority agree that the defendant will plead guilty or nolo contendere to the charge and the date the judicial authority accepts or rejects the plea agreement.

"(f) Any period of time between the date on which the defendant enters a plea of guilty or nolo contendere and the date an order of the judicial authority permitting the withdrawal of the plea becomes final.

"(g) The period of delay resulting from a continuance granted by the judicial authority at the personal request of the defendant.

"(h) The period of delay resulting from a continuance granted by the judicial authority at the request of the prosecuting authority, if:

"(1) the continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting authority has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

"(2) the continuance is granted to allow the prosecuting authority additional time to prepare the state's case and additional time is justified because of the exceptional circumstances of the case.

"(i) With respect to a defendant incarcerated in another jurisdiction, the period of time until the defendant's presence for trial has been obtained, provided the prosecuting authority has exercised reasonable diligence (A)

was engaged in a trial in another case. The defendant appeals, upon our grant of certification,[3] from the judgment of the Appellate Court affirming his conviction of attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1).[4] The defendant claims that, once the time limits set forth in

in seeking to obtain the defendant's presence for trial upon receipt of a demand from the defendant for trial, and (B) if the defendant has not theretofore demanded trial, in filing a detainer with the official having custody of the defendant requesting that official to advise the defendant of the defendant's right to demand trial.

"(j) Other periods of delay occasioned by exceptional circumstances."

At the time in issue here, Practice Book § 956D provided: "—Motion for Speedy Trial; Dismissal

"If the defendant is not brought to trial within the applicable time limit set forth in Secs. 956B and 956C, and a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules."

Effective October 1, 1995, Practice Book § 956D, as amended, provides: "—Motion for Speedy Trial; Dismissal

"If the defendant is not brought to trial within the applicable time limit set forth in Secs. 956B and 956C, and, *absent good cause shown,* a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. *For the purpose of this section, good cause consists of any one of the reasons for delay set forth in Sec. 956C. When good cause for delay exists, the trial shall commence as soon as is reasonably possible.* Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules." (Emphasis added.) Hereafter, references to Practice Book § 956D in this opinion are to the rule as it existed prior to the 1995 amendment.

[3] We granted the defendant's petition for certification to appeal, limited to the following issue: "What effect, if any, does a public defender's unavailability to conduct a trial have on a defendant's statutory right to a speedy trial?" *State* v. *Brown,* 239 Conn. 925, 683 A.2d 21 (1996).

[4] General Statutes § 53a-49 provides: "Criminal attempt: Sufficiency of conduct; renunciation as defense. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commis-

§§ 956B and 956C had passed and he had filed a motion for a speedy trial under § 956D, the trial court had no authority to delay his trial until his attorney completed

sion of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

General Statutes § 53a-59 provides: "Assault in the first degree: Class B felony: Nonsuspendable sentences. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person; or (5)

another trial in which he was engaged. We disagree, and affirm the judgment of the Appellate Court, although on different grounds from those articulated by that court.

The Appellate Court stated the facts that the jury reasonably could have found as follows. "On January 9, 1993, the victim, Vincent Broadnax, went to his second floor bedroom to gather his belongings and to move them to an apartment that he had just rented. The victim shared a kitchen, living room, and bathroom with Yolanda Zayas, her five children, and her aunt, Odella Zayas, in the two-family dwelling. When the victim discovered that his clothes were missing, he began to question Odella Zayas. The defendant was in the apartment and threatened to shoot everybody if the victim continued making noise. After the victim stated that the defendant would not shoot anyone, the defendant ran into the victim's room and shot him with a sawed-off rifle. The bullet grazed the victim's upper right thigh. When the victim ran out of the house, the defendant followed and fired another shot that passed completely through the victim's thigh. Bridgeport police officer James Kirkland arrived at the scene as the victim was being transported to a hospital. Kirkland spoke to the defendant who stated that the assailant had fled down the street.

"A few days after the shooting, the victim spotted the defendant in a Bridgeport courthouse. The victim telephoned the police station and then notified the state's attorney's office. Kirkland arrested the defendant in the courthouse shortly thereafter." *State* v.

with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm.

"(b) Assault in the first degree is a class B felony provided (1) any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court and (2) any person found guilty under subsection (a) shall be sentenced to a term of imprisonment of which ten years of the sentence imposed may not be suspended or reduced by the court if the victim of the offense is a person under ten years of age."

*Brown,* 40 Conn. App. 483, 484–85, 671 A.2d 1316 (1996).

The defendant was arrested on January 14, 1993, and an information was filed against him on January 15, 1993. He was represented by Miles Gerety, an assistant public defender. It is undisputed that the defendant was incarcerated in lieu of bond from the time of his arrest. On September 14, 1993, Gerety filed, on behalf of the defendant, a motion for a speedy trial pursuant to General Statutes § 54-82m and Practice Book §§ 956B, 956C and 956D, and requested that the trial court "assign this case to a date certain for trial within thirty days of the filing date of this motion."[5]

On October 13, 1993, this motion came before the trial court, *Damiani, J.,* the presiding judge for criminal matters in the judicial district of Fairfield at Bridgeport. At the time the defendant's motion was heard, Gerety had been engaged in a trial in an unrelated case since September 7, 1993. In Gerety's absence, in court with the defendant was William Holden, who was then the chief public defender for the judicial district of Fairfield. The state was ready to proceed to trial. Holden, on behalf of the defendant, objected to any extension of time within which to commence the defendant's trial. The trial court indicated that, although it was inclined to "send the . . . matter for trial up to Judge

---

[5] In addition to the speedy trial provisions in the statutes and the rules of practice, the defendant also relied on the speedy trial principles of the federal and state constitutions. The Appellate Court resolved the constitutional aspects of the defendant's claim adversely to him, including the claim, to which the defendant adverts in his brief in this court, that the death of a witness constituted sufficient prejudice to violate his constitutional right to a speedy trial. *State* v. *Brown,* supra, 40 Conn. App. 488–90. We certified only those aspects of his speedy trial claim that involve the statute and, by extension, the rules of practice that implement the statutory provisions, which do not depend on a determination of prejudice. We therefore confine our discussion to the meaning of General Statutes § 54-82m and Practice Book §§ 956B, 956C and 956D, as applied to the facts of this case.

McKeever" with a new counsel appointed in Gerety's place, to do so would not be fair to the defendant "in that [Gerety] is his attorney."[6] The court, therefore, excluded "the [other client's trial] time from the thirty days. Once that trial is concluded, [the defendant's] case will go on trial . . . ."[7]

On October 15, 1993, Gerety, on behalf of the defendant, filed a written motion to dismiss the information on the grounds that "his trial has not commenced within thirty days of the filing of his [September 14, 1993] speedy trial motion." On October 20, 1993, Holden, acting on behalf of the defendant, moved for the appointment of attorney Robert Sullivan as a special public defender, on the ground that the defendant was "presently represented by [Gerety] who is on an extended trial, lasting one month already and has several speedy trial cases pending." The trial court granted that motion on the same day.

On Thursday, October 21, 1993, Gerety completed his other client's trial, and on Friday, October 22, 1993, he was unavailable because he attended the funeral of another attorney. On Monday, October 25, 1993, Gerety filed an appearance for the defendant in addition to

---

[6] The trial court also noted that "[t]o have another Public Defender represent [the defendant] at that trial would in fact give [him] a built-in habeas" based on ineffective assistance of counsel. Indeed, the court also questioned whether "another judge would actually start that trial knowing full well counsel of record who was familiar with the case was not present for trial, that a new counsel is there knowing nothing about the case. Therefore, [the defendant] will not be adequately defended and have proper assistance of counsel."

[7] When the defendant himself objected to this ruling, the trial court explained: "Your thirty days is up today but how can I put you on trial with a new lawyer who knows nothing about your case? How could that person defend you properly? . . . So I am not going to rush to give you a trial today. I am not trying to deny you your right. Once [Gerety] finishes that trial which will be next week some time, this case will go on trial. [Gerety] filed a speedy trial motion on September 14. He was already engaged in trial. There is no way I could stop that trial to start your trial."

Sullivan's appearance as special public defender, and the defendant's trial commenced on that date, within the meaning of the speedy trial provisions of the rules of practice, with the beginning of the jury voir dire before the trial court, *Maiocco, J.* See Practice Book § 956E.[8]

On October 26, 1993, the defendant's motion to dismiss came before Judge Damiani. Sullivan argued the motion on behalf of the defendant. The court noted that Gerety, who was "cocounsel" with Sullivan on the case, was now representing the defendant as "the lead counsel who is involved with the jury selection [and] trial of the case." The court denied the motion to dismiss for two reasons. The first reason was that, in light of the fact that most of the defendants in that judicial district were represented by a public defender, it would be contrary to the intent of the statute and the rules of practice, despite their language, to dismiss all of the cases pending against a majority of a public defender's clients for failure to meet the thirty day time limit of Practice Book § 956D when that delay was caused by the public defender's trial representation of another client.[9] The second reason was that, given Gerety's

[8] Practice Book § 956E provides: "—Definition of Commencement of Trial

"For purposes of Secs. 956A through 956D, 'commencement of trial' means the commencement of the voir dire examination in jury cases and the swearing-in of the first witness in nonjury cases."

[9] The trial court stated: "Presently pending as of the end of August in the Bridgeport [judicial district] are 113 potential speedy trial cases. Probably 90 percent of those cases are represented by [public defenders.] Now, if I accept your argument . . . and in theory it is a good argument, but in practicality 90 percent of those people have public defenders. Put one [public defender] on trial. You may have twenty cases pending out of the 90 percent or 95 [percent of the] other cases. That means his case takes thirty-two days, thirty-three days to try. All his other clients get a dismissal. They just get a free walk out the door. One poor unlucky individual who got picked for trial gets his trial and may be convicted and spend time in jail. But the other ones just by chance they walk out the door because that attorney is tied up on trial. I don't think that is the intent or the meaning of the statute or the Practice Book, irrespective of the fact that it does say 'shall.'"

unavailability at the time the motion was made, to have granted the defendant's thirty day speedy trial motion under § 956D would have been to deny him effective assistance of counsel and thus a fair trial, contrary to the intent of the statute and the rules of practice.[10]

Following the jury's guilty verdict[11] and the trial court's judgment of conviction, the defendant appealed to the Appellate Court raising several claims, among them that the trial court had denied him his statutory right to a speedy trial.[12] The Appellate Court did not address the merits of the defendant's claim because, in its view, the defendant's speedy trial motion, having been filed on September 14, 1993, was one day premature and, therefore, as a matter of law could not have

[10] The trial court stated: "To do what you [Sullivan] want also would be violating your client's rights. Mr. Gerety is his counsel. You were not appointed a special [public defender] until last Thursday, October 21. If in fact I put [the defendant] on trial subsequent to September 14, Mr. Gerety's on trial, do I send [the defendant] upstairs by himself pro se? Do I just pluck a lawyer out of the audience and say you're [the defendant's] lawyer? Do I give [the defendant] ability in habeas [to raise] an appealable issue? Do I impose upon an attorney to put his reputation on the line to go upstairs to sit at counsel table to represent [the defendant] in a case he is not prepared to defend? So what you're saying is to protect and preserve your client's right to a speedy trial I violate his right to have a fair trial and to have the effective assistance of counsel. I don't think that is the meaning or the import or the interpretation of [Practice Book § 956D] or of the statute."

Sullivan then noted for the record "that [the defendant] did in fact insist upon going forward with the speedy trial irrespective of Mr. Gerety's preoccupation with another trial." The court responded that it understood that the defendant "wanted to have his trial that very day. But I am here to ensure that a fair trial takes place. For me to send [the defendant] upstairs to represent himself or to say, Mr. 'X' or Mr. 'Z,' you represent [the defendant], is not fair to the attorneys and surely is not fair to [the defendant]."

[11] At trial, the state filed a substitute information charging the defendant with attempted assault in the first degree and assault in the second degree. The jury found him guilty of attempted assault in the first degree and the court thereafter dismissed the charge of assault in the second degree.

[12] The defendant also claimed that the trial court had: (1) denied him his constitutional right to a speedy trial; see footnote 5; and (2) made certain improper evidentiary rulings. The Appellate Court rejected those claims, and they are not before us on this certified appeal.

been granted. *State* v. *Brown*, supra, 40 Conn. App. 487. Accordingly, the Appellate Court affirmed the judgment of conviction. This appeal followed.

I

We first address the formulation of the certified issue. See footnote 3 of this opinion. Although we formulated the issue with a focus on the effect, if any, on the defendant's statutory right to a speedy trial, of his *public defender's* unavailability for trial, we now conclude that this focus was misdirected. First, we have never applied different rules of law or attributed different rights or obligations to defendants depending on whether they are represented by a public defender or a privately retained attorney. Indeed, we have emphasized that "the relation of attorney and client is the same when a public defender appears for one accused of crime as would be the relation between privately employed counsel and client." *Spring* v. *Constantino*, 168 Conn. 563, 575, 362 A.2d 871 (1975).

Second, although as part of its reasoning the trial court noted that most of the defendants in that judicial district were represented by a public defender—a fact that probably holds true, in varying degrees, for most if not all of our judicial districts—that was not the entire basis for its ruling. The other, and equally important, basis was that to grant the defendant's thirty day speedy trial motion would in effect have been to put at risk his constitutional right to competent counsel. That reason would apply equally to a case in which a defendant, in a similar situation, was represented by private counsel who was engaged in another criminal trial while the other client's statutory thirty day period was running. Indeed, we are aware from experience that the problem of the unavailability of counsel for a scheduled criminal trial, because counsel is engaged in another trial, occurs with respect to privately retained counsel as well. See,

e.g., *State* v. *Beckenbach*, 198 Conn. 43, 501 A.2d 752 (1985).

Moreover, there is nothing in this record to suggest that it is because this defendant was represented by a public defender, as opposed to a privately retained attorney, that he was not brought to trial within thirty days of his motion for a speedy trial. The record does not support a determination that this failure was due to a lack of resources available to the office of the public defender.

We do not doubt that the public defender system could benefit from additional resources. Such a generalized notion, which may well be shared by other components of our criminal justice system, does not mean, however, that any individual case should be resolved based on an *assumption* of the effect of lack of resources. In the absence of a showing that a significant deficiency in resources available to the public defender system substantially contributed to the denial of an individual's speedy trial rights, we decline to create a rule of law that differentiates between the rights of defendants represented by a public defender and those represented by private attorneys. Cf. *Gaines* v. *Mason*, 194 Conn. 510, 481 A.2d 1084 (1984).

Accordingly, we reformulate our certified question to eliminate its focus on the availability for trial of the defendant's public defender. We consider the more appropriate question to be whether, under the circumstances, the fact that the defendant's attorney was engaged in another criminal trial justified the trial court's denial of the defendant's motion to dismiss the information.

II

The defendant claims that once the eight month period for commencing his trial had passed, and he

subsequently had filed a motion for a speedy trial, then if his trial did not commence within thirty days of the filing of his speedy trial motion, his subsequent motion to dismiss was required to be granted with prejudice. The defendant's argument is straightforward. He contends that there are no time exclusions from the thirty day motion period under either General Statutes § 54-82m or Practice Book § 956D, which was promulgated pursuant to § 54-82m. In support of his reading of the statute, the defendant points to certain of its legislative history, and to the familiar canon of statutory construction that criminal statutes are "to be construed liberally in favor of the defendant and strictly against the state." Consequently, he contends, the trial court had no option but to grant his motion to dismiss. Although we acknowledge that the language of both the statute and the rules of practice, read literally, supports the defendant's claim, we conclude that the language cannot be applied sensibly in that fashion, and that the trial court had the authority to delay the defendant's trial for a reasonable period of time until his counsel had finished his other trial.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d

742 (1997). In accomplishing this task, we take account of the rules of statutory construction as "important guidelines to the determination of legislative meaning. To permit them to displace the conclusions that careful interpretation yields, however, would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies." Id., 455. The same process of interpretation applies "to provisions of the [rules of practice]." *State* v. *Cain*, 223 Conn. 731, 744, 613 A.2d 804 (1992).

We recognize, as previously noted, that the language of both General Statutes § 54-82m and Practice Book § 956D, as it existed at the time in issue here; see footnote 2 of this opinion; provided for certain time extensions applicable to the defendant's eight month incarceration period but not to the thirty day period following his speedy trial motion. Section 54-82m requires that the rules adopted by the judges of the Superior Court, "to assure a speedy trial for any person charged with a criminal offense . . . shall provide that (1) in any case in which a plea of not guilty is entered . . . [and] when such defendant is incarcerated in a correctional institution of this state pending . . . trial . . . the trial of such defendant shall commence within eight months from the filing date of the information . . . or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information . . . shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

Practice Book § 956D provided in relevant part: "If the defendant is not brought to trial within the applicable time limit set forth in Secs. 956B and 956C,[13] and a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period."

Thus, under the literal language of the statute an incarcerated defendant must be brought to trial within eight months, plus any excludable time calculated under the rules promulgated by the judges of the Superior Court, of his arrest or the filing of an information, whichever is later. Once that time has passed, he may then file a motion for a speedy trial. If thirty days passes without his trial commencing, he may then file a motion to dismiss, which must be granted with prejudice. The court has the authority to exclude certain periods of time in calculating when the eight month speedy trial time for an incarcerated defendant expires, but there is no corresponding language authorizing any extension of the thirty day period that begins to run upon the filing of a speedy trial motion following the expiration of that eight month period. Indeed, the specific direction in the last sentence of § 54-82m to the judges, in their rule-making capacity, "to identify periods . . . to be excluded in computing the time limits *set forth in subdivision (1)*"; (emphasis added); without a corresponding direction to exclude any time periods to be excluded in computing the thirty day period under subdivision (2), precludes the inference, at least in the ordinary

---

[13] Practice Book §§ 956B and 956C, in general, set forth the time periods to be excluded in calculating the time within which a trial must be commenced under subdivision (1) of General Statutes § 54-82m. As applied to the defendant, they would consist of any excludable periods of time in the calculation of the eight month period under that subdivision. In this case, there were no such exclusions.

case, that the court has such authority to extend the thirty day period.

The rules of practice, adopted pursuant to § 54-82m, track the distinction drawn by the statute between the initial eight month period and the subsequent thirty day period following a motion for a speedy trial. Sections 956B and 956C set forth the parameters of the eight month period. Specifically, § 956B sets forth, among other things, the eight month period for the commencement of the trial of an incarcerated defendant. Section 956C sets forth the periods of time to be excluded in computing the eight month time period set forth in § 956B. Section 956D, which sets forth the procedure and timing for the subsequent thirty day speedy trial motion and motion to dismiss, has no language providing for periods of exclusion.

We conclude, nonetheless, that where the reason for the failure to commence the defendant's trial within thirty days of his speedy trial motion filed under § 956D is that his attorney is then engaged in another criminal trial, the court has the inherent power to suspend the running of that period for a reasonable time until the attorney becomes available, and that neither the statute nor the rules of practice precludes the exercise of that power. We reach this conclusion for several reasons.

First, if a literal interpretation of statutory language "would lead to an unworkable result," we avoid such an interpretation. *State* v. *Cain*, supra, 223 Conn. 745. In the present case, it would lead to an unworkable result to require a dismissal for failure to commence the defendant's trial within thirty days of the defendant's speedy trial motion, if the reason for that failure is that the defendant's own attorney is engaged in a trial in another criminal case. It would be equally unworkable to require that the trial commence within that period of time in the absence of the defendant's attorney—

either by appointing substitute counsel for the defendant or requiring him to proceed pro se.[14] Although the trial court did appoint Sullivan to represent the defendant in place of Gerety, the defendant does not claim that Sullivan would have been prepared to proceed to trial on the case within the thirty day period.

Indeed, a literal interpretation of the language of the statute and the rules of practice would lead to other unworkable results. Reading the language to permit *no* exceptions once the thirty day speedy trial motion was filed would mean, for example, that even if the defendant's attorney were to become unavailable because of illness or other unavoidable circumstance, or even if the defendant fled the jurisdiction, the case would have to be dismissed. Despite the categorical nature of the language of the statute and the rules of practice, we conclude that it would not require such a result. Thus, if a literal application of the language of the statute would generate a clash between the defendant's rights to a speedy trial and to adequate representation, the literal application must yield to the power of the court to make a reasonable accommodation between those two rights, as did the trial court in this case.

Second, a useful guide to the meaning of statutory language is an identification of the principal audience of that language—that is, by answering the question: To whom is the statute primarily addressed? *State* v. *Piorkowski*, 236 Conn. 388, 408–409, 672 A.2d 921 (1996). As Judge Learned Hand said: "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used, *of which the relation between the speaker and the*

---

[14] We note that the defendant does not claim in this appeal that he was deprived of his right to represent himself at trial.

*hearer is perhaps the most important part.*" (Emphasis added.) *National Labor Relations Board* v. *Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941). The same principle applies to statutory language. Part of the context in which that language is to be understood is its primary audience or audiences.

One of the primary audiences of General Statutes § 54-82m is the judges of the Superior Court. The first sentence of § 54-82m is directed to that audience: "In accordance with the provisions of section 51-14, the judges of the Superior Court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985." Thus, although the statute creates a statutory speedy trial right in defendants, and although it sets the parameters of that right, it provides that the judges are to adopt the rules by which that right is implemented. In pursuance of that statutory directive, the judges adopted Practice Book § 956D.

This background buttresses our conclusion that, despite the categorical language of both General Statutes § 54-82m and Practice Book § 956D, they cannot be read to preclude the trial court's inherent power to make a reasonable accommodation in an individual case between the right to a speedy trial and the unavailability of the defendant's attorney. It is unlikely that either the legislature in enacting the statute directed to the judges, or the judges in adopting the rules of practice pursuant to the statute, intended to put a trial court in such a dilemma. The language must be understood to admit of an implied exception for such a case.[15]

---

[15] Indeed, dating from the enactment of § 54-82m, the judges of the Superior Court have considered that its language cannot be read so literally as to preclude the rules of practice adopted pursuant thereto from including reasonable circumstances that are within its purpose but not its literal language. For example, § 54-82m provides that, "in computing the time limits set forth in subdivision (1)," those rules "shall include provisions to identify

Third, there is nothing in the legislative history that compels a different conclusion. It is true, as the defendant points out, that as originally drafted the bill that ultimately became § 54-82m gave more discretion to the judges in setting the speedy trial parameters; see 25 S. Proc., Pt. 4, 1982 Sess., p. 1234, remarks of Senator Howard T. Owens, Jr.; and that language was ultimately eliminated from the bill as enacted. It is also true that some of the legislative debate indicates a legislative intent that "[i]t will be automatic release at the end of thirty days if the trial does not commence." 25 H.R. Proc., Pt. 18, 1982 Sess., p. 5806, remarks of Representative Richard D. Tulisano. The legislative debate does not, however, indicate an awareness of a circumstance as presented in this case, in which the unavailability of the defendant's attorney is the reason that the trial cannot be started within the thirty day period. We cannot construe the language to encompass such a situation.

Finally, we note that the Second Circuit Court of Appeals, in construing similarly categorical language of the speedy trial plan of the District Court of Connecticut, held that there was an implied necessity exception to language requiring the commencement of a retrial of a criminal defendant "not later than [sixty] days after

periods of delay *caused by the action of the defendant, or the defendant's inability to stand trial . . . .*" (Emphasis added.) Despite this language, however, the rules adopted for computing those time limits include numerous instances that are not strictly attributable to the action of the defendant or his inability to stand trial. See, e.g., Practice Book § 956C (b) (period of delay resulting from "absence or unavailability of . . . counsel for the defendant, or any essential witness for the prosecution or defense"); Practice Book § 956C (d) ("reasonable period of delay when the defendant has been joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"); Practice Book § 956C (h) (period of delay "resulting from a continuance granted by the judicial authority at the request of the prosecuting authority" if certain conditions are met); Practice Book § 956C (j) ("[o]ther periods of delay occasioned by exceptional circumstances").

the finality of" the order for a new trial. *United States v. Bubar*, 567 F.2d 192, 206 n.20 (2d Cir. 1977). The court stated: "It requires but a moment's reflection . . . to recognize that there are certain situations where, to apply the [sixty] day limitation provision . . . as an absolute bar, would result in a gross miscarriage of justice—most assuredly contrary to the intent of the drafters of the provision. For example, the [sixty] day period could run out because a defendant became sick or had fled the jurisdiction. Under the literal reading of [the plan] urged by [the defendant], such a defendant would be rewarded by dismissal of the indictment. In our view, an exception to the [sixty] day limitation period for acts of God and misconduct on the part of a defendant clearly is a necessary implication. That being so, we see no justification for limiting the implied exception to those situations. Necessity of a different but equally compelling character arises when the district court is called upon to protect a defendant's rights." Id., 207–208. The same reasoning applies in the present case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.