STATE OF CONNECTICUT *v.* ALLEN ROSARIO
(AC 29414)

Flynn, C. J., and Robinson and Mihalakos, Js.

Argued September 17—officially released December 15, 2009

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Allen Rosario, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes (Rev. to 2005) § 53a–101 (a) (1),[1] burglary in the second degree in violation of General Statutes (Rev. to 2005) § 53a–102 (a) (1),[2] burglary in the third degree in violation of General Statutes § 53a–103[3] and robbery in the first degree in violation of General Statutes § 53a–134 (a) (3).[4] On appeal, the defendant claims that the court improperly denied his motion to dismiss because his statutory and constitutional right to a speedy trial was violated. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The events in question occurred during the early

---

[1] General Statutes (Rev. to 2005) § 53a–101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with . . . a deadly weapon or dangerous instrument . . . ."

[2] General Statutes (Rev. to 2005) § 53a–102 (a) provides in relevant part: "A person is guilty of burglary in the second degree when such person (1) enters or remains unlawfully in a dwelling at night with intent to commit a crime therein . . . ."

[3] General Statutes § 53a–103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[4] General Statutes § 53a–134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a–133 or of immediate flight therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

morning hours of December 24 and 25, 2005. On the evening that began on December 23, 2005, Michael Dalenta, Adam Friedman and Jonathan Bard, three roommates living in a second floor apartment located at 34 Depot Street in East Windsor, entertained friends for a Christmas party at their apartment. Shortly after midnight, a guest who had stepped out onto the balcony to make a cellular telephone call observed the defendant inside Bard's car, which was located ten feet below the balcony. The guest yelled to the defendant to "get out of the car," at which point the defendant exited the vehicle and began walking away. The guest immediately shouted to the three roommates that someone was breaking into Bard's car. The three roommates and several guests ran down the street in chase and caught up with the defendant, whom they detained until police arrived. Bard's car door was open and his CD case was found in a nearby snowbank. Jeffrey Capen, an East Windsor police officer, arrived and upon investigation, placed the defendant under arrest. The defendant was found to be in possession of a small folding knife, which was confiscated. Friedman testified that shortly after the defendant was placed in the police cruiser, the defendant yelled to the roommates "angry, threatening things" such as, "I'll be back, this doesn't stop me, don't think you're safe." The defendant was booked at the police station and eventually released after being told not to have any contact with the three roommates.

The next evening, December 24, 2005, Dalenta was alone at the roommates' Depot Street apartment. Friedman and Bard were home for the Christmas holiday. At approximately 4 a.m., then Christmas morning, Dalenta was awakened by a banging sound coming from Bard's room. Dalenta entered the bedroom and observed the defendant going through his roommate's dresser. When Dalenta confronted the defendant, the defendant pulled a knife from his jacket and said, "you don't know who

you're effing with," and immediately fled the apartment. Shortly thereafter, the police arrived with a canine unit that led police to the defendant's home. Although the defendant denied having been the perpetrator of the burglary, he was identified by Dalenta and found to be in possession of items missing from the apartment, including $40 in loose change and a silver Paul Jardin watch. The defendant subsequently was arrested and remained in custody thereafter in lieu of bail.

The defendant was arraigned on December 27, 2005, and the case was presented in the part A courtroom on January 19, 2006. The case was the subject of multiple judicial pretrials until June 29, 2006, when the case was placed on the firm jury list. For the next several months, the defendant's attorney was unavailable because he was trying a capital murder case. On May 7, 2007, the defendant filed a motion for a speedy trial and a motion to dismiss. A hearing on the motion to dismiss was held on May 23, 2007. On June 11, 2007, the court denied the defendant's motion to dismiss and trial began. Additional facts and procedural history will be provided as necessary.

I

The defendant first claims that his statutory right to a speedy trial, pursuant to General Statutes § 54-82m,[5]

[5] General Statutes § 54–82m, titled, "Rules re speedy trial to be adopted by judges of Superior Court effective July 1, 1985," provides: "In accordance with the provisions of section 51-14, the judges of the superior court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set

was violated. The defendant claims that the speedy trial procedures outlined in our rules of practice are contrary to § 54-82m. The defendant further argues that even if our rules of practice comply with this statute, the practices at the Hartford Superior Court are inconsistent with our rules and with the statute. We disagree.

Section 54-82m authorizes the judges of the Superior Court to make rules of procedure to ensure that defendants receive a speedy trial. The statute states that any corresponding rules must require that trial takes place within twelve months after a defendant is charged with a crime, except that if a defendant is incarcerated while awaiting trial, the trial must occur within eight months. The statute further provides that the charges against a defendant must be dismissed if that defendant is not brought to trial within thirty days of a motion for a speedy trial filed after the expiration of the eight or twelve month time period, minus excludable time. Practice Book §§ 43-39, 43-40 and 43-41[6] provide a strict

forth in subdivision (1) of this section and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to indentify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1) of this section."

[6] Practice Book § 43-39 provides in relevant part: "(c) Except as otherwise provided herein and in Section 43-40, the trial of a defendant charged with a criminal offense on or after July 1, 1985, shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later.

"(d) The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of General Statutes § 54-82c. . . ."

Practice Book § 43-40 provides in relevant part: "The following periods of time shall be excluded in computing the time within which the trial of a defendant charged by information with a criminal offense must commence pursuant to Section 43-39:

liability form of protection for a defendant's right to a speedy trial.

"The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Internal quotation marks omitted.) *State* v. *Cote*, 101 Conn. App. 527, 532, 922 A.2d 322, cert. denied, 284 Conn. 901, 931 A.2d 266 (2007).

In this case, the speedy trial clock began to run when the defendant was arraigned, on December 27, 2005.[7] In ruling on the defendant's motion to dismiss, the court found that the clock was stopped from January 27 until June 29, 2006, due to continuances that were either at

"(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . .

"(D) the time between the commencement of the hearing on any pretrial motion and the issuance of a ruling on such motion . . .

"(2) Any period of delay resulting from the absence or unavailability of the defendant, counsel for the defendant, or any essential witness for the prosecution or defense. . . .

"(7) The period of delay resulting from a continuance granted by the judicial authority at the personal request of the defendant. . . ."

Practice Book § 43-41 provides: "If the defendant is not brought to trial within the applicable time limit set forth in Sections 43-39 and 43-40, and, absent good cause shown, a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. For the purpose of this section, good cause consists of any one of the reasons for delay set forth in Section 43-40. When good cause for delay exists, the trial shall commence as soon as is reasonably possible. Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules."

[7] The defendant claims that it is the practice of the Hartford Superior Court to toll the speedy trial clock until after a plea offer is rejected. The defendant argues that the speedy trial clock did not begin to run until June 29, 2006; however, the court rejected this claim. There is nothing in the record to indicate that the speedy trial clock did not begin at the defendant's arraignment, on December 27, 2005.

the request of the defendant or by agreement between the state and the defendant. The speedy trial clock resumed on June 29, 2006, and ran for another seven months pursuant to Practice Book § 43-39, until late January, 2007.[8] The defendant filed a motion for a speedy trial as well as a motion to dismiss on May 7, 2007, giving the state thirty days to try him.[9] For purposes of ruling on that motion, the court ruled that there was excludable time from May 23 until June 11, 2007, while the court considered the defendant's motion. Trial officially began on June 11, 2007, within the thirty day requirement.

Considering the evidence available to this court, we cannot conclude that the defendant's statutory right to a speedy trial was violated. The court's memorandum of decision offered a thoughtful, well reasoned explanation of its denial of the defendant's motion to dismiss. Moreover, the record provides no factual basis for the defendant's claim that either the applicable provisions of our rules of practice conflict with § 54-82m, or that the Hartford Superior Court routinely treats all time before a plea offer as excludable time. Most importantly, neither claim has merit in this case. As such, we choose not to venture down the road of issuing advisory instructions beyond those enumerated in our rules of practice and General Statutes.[10]

---

[8] For much of this time, the defendant's attorney was unavailable because he was trying a capital murder case. See Practice Book § 43-40 (2).

[9] See *State* v. *Brown*, 242 Conn. 389, 404, 699 A.2d 943 (1997) ("[A]n incarcerated defendant must be brought to trial within eight months, *plus* any excludable time calculated under the rules promulgated by the judges of the Superior Court, of his arrest or the filing of an information, whichever is later. Once that time has passed, he may then file a motion for a speedy trial." [Emphasis added.]). It is not until the defendant actually files a timely motion for a speedy trial that the thirty day clock begins. See footnote 6, quoting Practice Book § 43-41.

[10] We further reject the defendant's claim that § 54-82m contains a demand-waiver provision that effectively infringes his constitutional right to a speedy trial. Rather, the defendant's statutory right to a speedy trial is encompassed within his constitutional right to a speedy trial. Even when a defendant fails

II

The defendant also claims that his constitutional right to a speedy trial was violated. See U.S. Const., amend. VI; Conn. Const., art. I, § 8. This claim likewise fails.

The sixth amendment guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment to the United States constitution. *Klopfer* v. *North Carolina*, 386 U.S. 213, 223–24, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). This right also is guaranteed by the constitution of Connecticut, article first, § 8. "Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society." (Internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 117, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

The Supreme Court of the United States and the Connecticut Supreme Court have identified four factors that form the matrix of the defendant's constitutional right to speedy adjudication: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right and (4) prejudice to the defendant. *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd*, 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims*, 180 Conn. 589, 591, 430 A.2d 1306 (1980). "A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated." (Internal quotation marks omitted.) *State* v.

to make a timely statutory speedy trial claim, he certainly is not precluded from bringing a constitutional speedy trial claim. See *State* v. *McKenzie-Adams*, 281 Conn. 486, 509, 915 A.2d 822 (state governments may choose to afford defendants higher level than provided by federal constitution), cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

*Lacks*, 58 Conn. App. 412, 417, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000).

## A

The Connecticut rules of practice set out specific time limitations within which a criminal trial must commence. Practice Book §§ 43-39 and 43-40. "Our courts have not held that any particular length of delay is presumptively prejudicial, but have stated that an extensive delay warrants an inquiry into the other factors of *Barker*. See, e.g., *State* v. *Rodriguez*, 47 Conn. App. 91, 100, 702 A.2d 906 (1997) (fourteen months), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998); *State* v. *Flowers*, 198 Conn. 542, 544, 503 A.2d 1172 (1986) (eighteen months); *State* v. *Gasparro*, 194 Conn. 96, 100, 480 A.2d 509 (1984) (three and one-half years), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985); *State* v. *Cleary*, 3 Conn. App. 349, 350–51, 488 A.2d 831 (1985) (thirty-eight months). There is no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months. *Barker* v. *Wingo*, supra, 407 U.S. 523; *State* v. *Ortiz*, 252 Conn. 533, 569, 747 A.2d 487 (2000). Although no exact length of time has been established as sufficient to presume prejudice, a delay of approximately seventeen months is sufficient to warrant investigation into the other factors of *Barker*.

## B

The second factor under the *Barker* matrix concerns the reasons for the delay of trial. Here, there was approximately a seventeen month time interval between the defendant's arrest and his trial. "In examining the reason for the delay, we focus on whether the state was making a deliberate attempt to delay the trial in order to hamper the defense or whether there existed a valid reason . . . [that] should serve to justify appropriate delay." (Internal quotation marks omitted.) *State*

v. *Brown*, 40 Conn. App. 483, 489, 671 A.2d 1316 (1996), aff'd, 242 Conn. 389, 699 A.2d 943 (1997).

There are two principal explanations for the seventeen month delay in this case. Foremost, between January 26 and June 29, 2006, continuances were requested either by the defendant or jointly by the defendant and the state. See *State* v. *Gaston*, 86 Conn. App. 218, 227–28, 860 A.2d 1253 (2004) ("[A] significant reason for the delay of the trial was caused by the defendant's requests for continuances. . . . [I]t was the actions of the defendant, rather than those of the state, that resulted in the delay of the trial. Accordingly, this factor weighs against the defendant." [Citation omitted; internal quotation marks omitted.]), cert. denied, 273 Conn. 901, 867 A.2d 840 (2005).

Second, between June 29, 2006, and February 1, 2007, the defendant's attorney was unavailable because he was trying a capital murder case. This time weighs against the defendant as excludable time, pursuant to Practice Book § 43-40 (2). See *State* v. *Brown*, supra, 40 Conn. App. 489 (holding that trial court properly delayed defendant's trial where defendant's attorney had another trial because commencing trial without attorney would have deprived defendant of constitutional right to effective assistance of counsel).

The evidence weighs strongly that the reasons for delay were not a result of the state's actions but, rather, the actions of the defendant.

C

The third *Barker* factor is the assertion by the defendant of his right to a speedy trial. On May 7, 2007, seventeen months after his arrest and nine days before trial would have commenced,[11] the defendant filed a

---

[11] Trial was originally set for April 23, 2007, before a judge trial referee. The defendant chose not to consent to trial before a referee, so the trial date was changed to May 16, 2007. Trial was again delayed when the defendant filed a motion to dismiss on May 7, 2007.

motion for a speedy trial, along with a motion to dismiss. This factor militates against the defendant's claim. "The failure to assert the right, while not constituting a waiver, does make it difficult for the defendant to prove that he was denied a speedy trial." *State* v. *Lacks*, supra, 58 Conn. App. 419. While it should be noted that the defendant, on June 26, 2006, complained to the court that his lawyer had not yet filed a motion for a speedy trial, such a motion at that time would not have been ripe. Likewise, because the defendant's trial commenced within thirty days of filing his motion for a speedy trial,[12] his assertion of his right to a speedy trial is afforded little weight in the *Barker* balancing test.

## D

The final *Barker* factor, prejudice to the defendant, is the linchpin of the speedy trial claim. Id. "[U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself. . . . The right to a speedy trial is designed (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. . . . In *Barker* . . . the court noted that of the three interests served by the right to speedy trial, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 47 Conn. App. 102–103.

---

[12] The court properly concluded that the time spent considering the defendant's motion to dismiss was excludable for purposes of the thirty day requirement. See *State* v. *Brown*, 242 Conn. 389, 405, 699 A.2d 943 (1997) (holding that neither statute nor rules of practice preclude court's power to suspend running of thirty day period for reasonable time to avoid unworkable results).

Here, the defendant argues solely that the delay resulted in a breakdown of the attorney-client relationship. At the hearing on his motion to dismiss, the defendant stated that he did not feel comfortable with his attorney's representation and, most notably, voiced his belief that public defenders are paid a commission to "plead out" their clients. At no point did the defendant offer any testimony that would indicate the delay itself was the cause of friction between himself and his attorney, other than the vague claim that he had requested his attorney to "do certain things for [him] and [he] wouldn't do them." On the basis of the evidence presented, we are not persuaded that the delay prejudiced the defendant's relationship with his attorney.

On the basis of our consideration of the four *Barker* factors, we conclude that the defendant was not denied his constitutional right to a speedy trial. The court properly denied his motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.