STATE OF CONNECTICUT *v.* ALEXANDER LACKS
(AC 18589)

O'Connell, C. J., and Schaller and Daly, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 22, 1999—officially released June 27, 2000

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Alexander Lacks, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c[2] and robbery in the first degree in violation of General Statutes § 53a-134.[3] The defendant claims

---

[2] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

that the court improperly (1) failed to grant his motion to dismiss based on lack of a speedy trial, (2) failed to grant his motion for a new trial based on prosecutorial misconduct that occurred during closing argument, (3) instructed the jury regarding consciousness of guilt and (4) instructed the jury on the law of reasonable doubt. We disagree.

The jury reasonably could have found the following facts. On the evening of October 24, 1994, Jose Marrero, Amy Cobain and Devon McFarlane went to Louis Hood's apartment on Frank Street in New Haven. The quartet then proceeded to a nearby convenience store on Arch Street, where Marrero sought to obtain change for a $100 bill. Three black males, who were later identified as the defendant, Eaker McClendon and Leotis Payne, followed them.

McFarlane did not enter the store with the others. After Marrero obtained his change, the quartet started walking back to Hood's apartment. The defendant, McClendon and Payne were still following them. Suddenly, Payne approached Cobain, put a gun to her head and demanded money. The defendant and McClendon repeatedly urged Payne to "hurry up" and get the money. Hood pushed Cobain out of the way and urged her to run, which she did. Payne then put the gun to Marrero's head, went through his pockets and took his money. Then, as Payne began to pull the trigger of the gun, Hood pushed Marrero out of the way and Payne shot Hood in the chest. Thereafter, the defendant, McClendon and Payne fled.

Officer Ricardo Rodriguez of the New Haven police department arrived at the scene and observed Hood on the sidewalk. Hood was later pronounced dead from the bullet wound, from which a .25 caliber bullet was extracted. Later, Marrero identified the defendant, McClendon and Payne at the police station as the perpe-

trators of the crime, and Cobain and McFarlane indicated that Payne was the shooter.

On October 27, 1994, the police entered the apartment of the defendant's girlfriend by use of force, found the defendant and arrested him. McClendon had fled out the back window and subsequently was apprehended. At trial, the defendant testified that on the night of the shooting he was unarmed and unaware of Payne's intentions or that Payne possessed a gun. He testified further that he did not see Payne or any other individual rob anyone and ran because he was fearful of gang members.[4]

I

The defendant claims first that the court improperly denied his motion to dismiss, thereby denying him his constitutional right to a speedy trial. We disagree.

Practice Book § 43-41 provides in relevant part: "If the defendant is not brought to trial within the applicable time limit . . . and, absent good cause shown, a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice . . . ." Therefore, before the defendant may move for dismissal, he must file a motion for a speedy trial. In addition, § 43-41 further provides: "Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules." "Because a motion to dismiss is waived unless filed before the commencement of trial and a motion for a speedy trial must precede a motion for dismissal, logically a motion for a speedy trial must also be filed before the commencement of trial in order

---

[4] Some fifteen minutes before the shooting episode, the defendant, McClendon and Payne asked Steven Thomas, who later testified as a state's witness, if he would like to make some money, but he declined.

to be afforded a remedy under the rules." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 47 Conn. App. 91, 98–99, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998). "For the purpose of the speedy trial rules, commencement of trial 'means the commencement of the voir dire examination in jury cases and the swearing-in of the first witness in nonjury cases.' Practice Book § 956E [now § 43-42]." *State* v. *Green*, 38 Conn. App. 868, 873, 663 A.2d 1085 (1995).

Here, the defendant filed a motion for a speedy trial on October 8, 1996. Because this matter was tried to a jury, the trial is deemed to have commenced on October 26, 1996, the day voir dire began. The trial was commenced, therefore, within thirty days of the filing of the motion for a speedy trial. The jury selection began on October 21, 1996, but was not completed until December 17, 1996, because some of the jurors had been excused. The defendant, however, did not file his motion to dismiss until December 12, 1996, subsequent to the commencement of voir dire. We conclude, therefore, as a matter of law, that the motion to dismiss was not timely filed and that the defendant waived his right to dismissal under the rules.

The defendant also claims that his constitutional right to a speedy trial was violated. See U.S. Const., amend. VI; Conn. Const., art. I, § 8. This claim fails.[5]

---

[5] The defendant also argues that the action of the court in commencing jury selection in his case to satisfy the speedy trial rules while postponing the evidentiary portion of the trial until the completion of the trial of a codefendant failed to satisfy his right to a speedy trial. The defendant asserts that the remarks by the court that commencing jury selection would comply with the speedy trial requirement, demonstrated a violation of the spirit of the speedy trial rule. The court stated: "I can pay it a legal fiction today, start picking a jury and that would stay the statute too and still have Mr. Payne go forward either with another Judge or with me. That would fulfill the requirements of the Practice Book. . . . [T]he black letter of the Practice Book that would be in compliance."

While we do not condone the explanation offered by the court for satisfying the right to a speedy trial by commencing jury selection, we conclude that, under the circumstances of this case, the defendant's right to a speedy

"The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 47 Conn. App. 98. "Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society." (Internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 117, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

"The Supreme Court of the United States and [the Connecticut Supreme Court] have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd*, 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims*, 180 Conn. 589, 591, 430 A.2d 1306 (1980). A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated." (Internal quotation marks omitted.) *State* v. *Martin*, 56 Conn. App. 98, 102–103, 741 A.2d 337 (1999), cert. denied, 252 Conn. 926, 746 A.2d 790 (2000).

A

The Connecticut rules of practice set out specific time limitations within which a criminal trial must com-

trial was not violated by deferring the evidentiary portion of the trial until the codefendant's case was concluded. See *State* v. *Mooney*, 218 Conn. 85, 120, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

mence. Practice Book §§ 43-39 and 43-40. "Our courts have not held that any particular length of delay is presumptively prejudicial, but have stated that an extensive delay warrants an inquiry into the other factors of *Barker*. See, e.g., *State* v. *Gasparro*, 194 Conn. 96, 100, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985) (three and one-half years); *State* v. *Davis*, 192 Conn. 739, 740–41, 474 A.2d 776 (1984) (twenty-six months); *State* v. *Cleary*, 3 Conn. App. 349, 350–51, 488 A.2d 831 (1985) (thirty-eight months). There is no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months. *Barker* v. *Wingo*, supra, 407 U.S. 523. Although no exact length of time has been established to be sufficient to presume prejudice, a delay of over two years is sufficient to cause investigation into the other factors of *Barker*. *State* v. *Almgren*, 12 Conn. App. 364, 369, 530 A.2d 1089 (1987)." *State* v. *Martin*, supra, 56 Conn. App. 103–104; see also *State* v. *Rodriguez*, supra, 47 Conn. App. 100. The present case involves a delay of over two years and, therefore, we must consider the other *Barker* factors.

## B

The second factor under the *Barker* matrix concerns the reasons for the delay of trial. Here, there was approximately a twenty-four month time interval between the defendant's arrest and his trial. "In examining the reason for the delay, we focus on whether the state was making a deliberate attempt to delay the trial in order to hamper the defense or whether there existed a valid reason . . . [that] should serve to justify appropriate delay." (Internal quotation marks omitted.) *State* v. *Brown*, 40 Conn. App. 483, 489, 671 A.2d 1316 (1996), aff'd, 242 Conn. 389, 699 A.2d 943 (1997).

The defendant argues that the delay was caused by the state's decision to try his codefendant, Payne, before

it tried the defendant.[6] Our review of the record in this case reveals that the state decided to try Payne first because Payne was the actual shooter. "While this delay cannot be attributed to the defendant, it will not be weighed heavily against the state." *State* v. *Mooney*, supra, 218 Conn. 120.[7]

## C

The third *Barker* factor is the assertion by the defendant of his right to a speedy trial. On October 8, 1996, almost two years after his arrest, the defendant filed a motion for a speedy trial. Subsequently, on October 25, 1996, the defendant filed a motion to dismiss. The defendant's assertion of his right to a speedy trial by a motion to dismiss was not filed until nearly twenty-four months after his arrest. " 'This factor militates against the defendant's claim. The failure to assert the right, while not constituting a waiver, does make it difficult for the defendant to prove that he was denied a speedy trial. *Barker* v. *Wingo*, supra, [407 U.S.] 528, 531–32.' " *State* v. *Almgren*, supra, 12 Conn. App. 370. Moreover, because the defendant's trial commenced within thirty days of his filing of a motion for a speedy trial, his assertion of his right to a speedy trial is afforded little weight in the *Barker* balancing test.

## D

The final *Barker* factor, prejudice to the defendant, is the linchpin of the speedy trial claim. *State* v. *Morrill*, 197 Conn. 507, 526, 498 A.2d 76 (1985). "[U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy

---

[6] Payne's trial ended on December 4, 1996.

[7] The defendant also refers to the fact that the trial was delayed because the prosecutor had sustained a back injury, and claims that this reason for the delay should weigh in his favor. The delay cause by the prosecutor's back injury, however, occurred *after* the commencement of the defendant's trial and, therefore, the defendant's claim must fail.

trial does not per se prejudice the accused's ability to defend himself. . . . The right to a speedy trial is designed (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. . . . In *Barker* . . . the court noted that of the three interests served by the right to speedy trial, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 47 Conn. App. 102–103.

Here, the defendant argues that he suffered prejudice resulting from the impairment in the memories of several witnesses due to the delay between the alleged crime and the trial. "A claim of general weakening of witnesses' memories, relying on the simple passage of time, cannot, without a more specific showing, be said to prejudice the defendant." (Internal quotation marks omitted.) *State* v. *Mooney*, supra, 218 Conn. 121.

The defendant also claims that "the most compelling evidence of prejudice" is the loss of ten of the original fourteen members of his jury. This argument is likewise without merit. We agree with the state that this claim is nonsensical in the context of a sixth amendment speedy trial claim. As discussed previously in this opinion, for purposes of the speedy trial rules, commencement of trial means commencement of the voir dire examination in jury cases, and so the relevant time period for determining delay is from the time the defendant was arrested until the beginning of jury selection. Any such delay claimed by the defendant as it relates to his losing ten members of his original jury had to have occurred after the trial was deemed to have commenced[8] and, therefore, has no bearing on a speedy trial claim.

---

[8] Moreover, a predominant reason for the loss of some of these original jurors was the unforeseen back injury suffered by the prosecutor, which

On the basis of our consideration of the four *Barker* factors, we conclude that the defendant was not denied his constitutional right to a speedy trial. The court properly denied his motion to dismiss.

## II

The defendant claims next that the court improperly failed to grant his motion for a new trial based on certain remarks made by the prosecutor in his closing argument, thereby denying him his rights to a fair trial and to due process of law.

As a preliminary matter, we note that the defendant did not object to any portion of the prosecutor's closing argument that he now challenges on appeal. He seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[9] and the plain error doctrine. Practice Book § 60-5. He also asks this court to invoke its supervisory powers over the administration of justice and to order a new trial. *State* v. *Pouncey*, 241 Conn. 802, 812–13, 699 A.2d 901 (1997). "Both this court and our Supreme Court have held that where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the

---

was going to delay the start of trial. This was, therefore, not a purposeful action by the state to delay the start of trial to the prejudice of the defendant.

[9] Under *State* v. *Golding*, supra, 213 Conn. 239–40, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Tyson*, 43 Conn. App. 61, 65, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996).

close of argument, he waives his right to press the claimed error on appeal. . . . Where counsel fails to object or to request a curative charge we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized." (Citations omitted; internal quotation marks omitted.) *State* v. *Eason*, 47 Conn. App. 117, 121, 703 A.2d 130 (1997), cert. denied, 243 Conn. 962, 705 A.2d 552 (1998).

"We have long held, moreover, that [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . because in such a case the claimed misconduct is insufficient to infect the fundamental fairness of the trial itself. . . . Furthermore, in order to warrant review under the plain error doctrine, the allegedly improper conduct must so pervade the defendant's trial as to have impaired the effectiveness or integrity of the judicial process." (Citations omitted; internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996).

Here, the prosecutor, in his closing argument, commented on the motivation and credibility of the defendant and the defense witnesses, as opposed to the state's evidence, and urged the jury to refer to the information filed. We have previously recognized that "it is improper for a prosecutor to express his or her own opinion, either directly or indirectly, as to the credibility of witnesses. . . . It is well settled, however, that a defendant may not prevail under *Golding* or the plain error doctrine unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial, nor will we invoke our supervisory authority to reverse an otherwise lawful criminal conviction absent a showing that

the conduct of the prosecutor was so offensive to the judicial process that a new trial is necessary to deter such misconduct in the future." (Internal quotation marks omitted.) *State* v. *Briley*, 55 Conn. App. 258, 262, 739 A.2d 293, cert. denied, 251 Conn. 927, 742 A.2d 363 (1999).

"In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 355, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "[B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . In reviewing claims of prosecutorial misconduct, we have focused on several factors, [including] . . . the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Briley*, supra, 55 Conn. App. 262–63.

"[T]he burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 356. The defendant in the present case has failed to meet this burden. The prosecutor's comments on the credibility and motivation of witnesses does not involve deliberate prosecutorial disregard of express judicial directions or established rules of fair play. "Given the lack of deliber-

ate prosecutorial misconduct or otherwise egregious or unduly offensive behavior, we also decline to exercise our supervisory powers over the administration of justice to order a new trial." *State* v. *Briley*, supra, 55 Conn. App. 264.

On the basis of our review of the record, we fail to see how the prosecutor's remarks were so abusive or prejudicial as to deprive the defendant of a fair trial.

III

The defendant claims next that the court improperly instructed the jury on the principle of consciousness of guilt. The defendant concedes that he neither filed a request to charge on consciousness of guilt nor objected to the court's instructions thereto. The defendant argues that this claim is reviewable under the *Golding* standard[10] and the plain error doctrine. Practice Book § 60-5. We decline to review this claim because we conclude that the defendant's claim fails the second prong of *Golding*.

"It has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the *Evans-Golding*[11] standard. . . . It is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Citations omitted; internal quotation marks omitted.) *State* v. *Gibson*, 56 Conn. App. 154, 160–61, 742 A.2d 397 (1999); see also

[10] See footnote 9.

[11] *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).

*State* v. *Snead*, 41 Conn. App. 584, 591, 677 A.2d 446 (1996).

Moreover, "[p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *King*, 216 Conn. 585, 591, 583 A.2d 896 (1990)." (Internal quotation marks omitted.) *State* v. *Tyson*, 43 Conn. App. 61, 66, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996). A careful review of the record leads us to conclude that this is not the case here. While we will, in appropriate circumstances, exercise our powers of supervision and control over proceedings on appeal, "[w]e will not . . . exercise those powers to allow litigants to circumvent the rules of practice." *State* v. *Sebastian*, 41 Conn. App. 530, 538, 677 A.2d 437 (1996).

IV

The defendant claims finally that the court's instruction on reasonable doubt was improper. Specifically, he contends that the court's instruction that reasonable doubt is not a "doubt suggested by [the] ingenuity of counsel" violated his constitutional rights. The defendant did not submit a request to charge on reasonable doubt, and he also failed to object to the reasonable doubt instruction given by the court. He seeks review, however, pursuant to *Golding* or the plain error doctrine.

The defendant concedes that our Supreme Court has rejected the claim that the use of the "ingenuity of counsel" language is violative of a defendant's constitutional rights. *State* v. *Delvalle*, 250 Conn. 466, 474–75, 736 A.2d 125 (1999); *State* v. *Hines*, 243 Conn. 796, 817–20, 709 A.2d 522 (1998). He nevertheless claims that the instruction here was improper in light of the decision of the United States Court of Appeals for the Second Circuit in *United States* v. *Doyle*, 130 F.3d 523, 533 (2d Cir. 1997), and our Supreme Court's statement

in *State* v. *Taylor*, 239 Conn. 481, 504, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997), that trial courts should avoid using such language in jury charges.

Like the defendant here, the defendant in *Hines* relied on *Doyle* to support his unsupported claim that the "ingenuity of counsel" language in a jury charge unconstitutionally diluted the state's burden of proof. *State* v. *Hines*, supra, 243 Conn. 818 n.17. Our Supreme Court rejected such a challenge, holding that the instruction invalidated in *Doyle*—that the law is designed to protect the innocent but not the guilty—was unrelated to the instruction at issue and, therefore, *Doyle* had no bearing on that case. Id. Accordingly, the defendant's reliance on *Doyle* in the present case is misplaced.

The defendant also correctly points out that in *Taylor* our Supreme Court urged trial courts to avoid further use of the "ingenuity of counsel" instruction. Subsequent to *Taylor*, in *State* v. *Delvalle*, supra, 250 Conn. 475–76, the Supreme Court stated that "[t]o avoid any possibility of juror confusion arising from the use of the phrase, we invoke our supervisory authority over the administration of justice to direct our trial courts to refrain from using the 'ingenuity of counsel' language in the future."[12] The court in both *Taylor* and *Delvalle*, however, concluded that an instruction virtually identical to that given in this case, when properly considered in the broader context of the trial court's instructions in their entirety, did not dilute the state's burden of proof or otherwise mislead the jury. Id., 474; *State* v. *Taylor*, supra, 239 Conn. 504–505; see also *State* v. *Young*, 56 Conn. App. 831, 843, 746 A.2d 795, cert. denied, 253 Conn. 904, 753 A.2d 939 (2000).

---

[12] The trial court's "ingenuity of counsel" instruction in the present case was given before the *Delvalle* court's direction about the future use of such language. See *State* v. *Taft*, 57 Conn. App. 19, 28, 746 A.2d 813, cert. granted on other grounds, 253 Conn. 909, 753 A.2d 942 (2000).

We conclude that the instruction in the present case, when viewed in the context of the court's jury instructions in their entirety, did not clearly deprive the defendant of a fair trial. See id. Moreover, because we cannot conclude that the instruction affected the fairness or integrity of the proceedings or resulted in manifest injustice to the defendant, there was no plain error.

The judgment is affirmed.

In this opinion the other judges concurred.