STATE OF CONNECTICUT *v.* ANDRE JEROME GASTON
(AC 23962)

Schaller, West and Hennessy, Js.

Argued September 17—officially released November 30, 2004

*Arnold V. Amore II*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Andre Jerome Gaston, appeals from the judgment of conviction, rendered after a jury trial, of escape in the first degree in violation of General Statutes § 53a-169 (a) (2). On appeal, the defendant claims that the court improperly (1) denied his motion for a speedy trial and his motion to dismiss on speedy trial grounds, (2) violated his sixth amendment right to a speedy trial and (3) allowed him to waive his right to counsel without conducting a proper canvass. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 17, 1982, the defendant was sentenced to a term of incarceration of not less than eigh-

teen years and not more than life after being convicted of felony murder. On June 28, 2000, the board of parole determined that the defendant would be eligible for release on or after June 1, 2002. On February 28, 2001, the defendant filed an application to be released to "community release," which was granted on March 16, 2001. Inmates who are selected for this program remain in the custody of the department of correction. The defendant arrived at the Community Partners in Action halfway house on December 17, 2001.

Residents of the halfway house, upon their arrival, receive a handbook detailing various rules and obligations. The defendant signed an agreement stating that he retained his status as an inmate and was subject to the rules of the department of correction. As part of the agreement, the defendant was obligated to obtain employment. Failure to abide by the terms and conditions constituted a violation that could lead to reincarceration. The agreement expressly forbade the defendant from leaving the state, and indicated that leaving the program would constitute escape in the first degree. Staff members monitored the residents by use of a log book. David Snyder, a case manager at the halfway house, described the conditions as "fairly restrictive."

After his arrival at the halfway house, the defendant obtained employment at a restaurant as a dishwasher and kitchen assistant. The defendant would sign out in the morning and list his expected return time, as well as provide the details regarding his planned activities. The regulations required a staff member to initial the log book at the time of the defendant's departure from and return to the halfway house.

The defendant satisfactorily complied with the terms and conditions of the halfway house for several months. On March 4, 2002, Michael Russo, a chef at the restau-

rant where the defendant worked, telephoned Snyder and reported that the defendant had failed to appear for work. After waiting several hours for the defendant to check in or arrive at work, Snyder spoke with Wendy Leak, a department of correction community enforcement officer. Leak subsequently prepared an affidavit to obtain an arrest warrant for the defendant.

The defendant spoke with Snyder and Leak's supervisor, Captain Martin Meehan, over the course of the next few days. The defendant indicated that he was going to turn himself in and both Snyder and Meehan told the defendant that it would be in his best interest to do so. The defendant, however, neither returned to the halfway house nor surrendered to the department of correction or to the police. Several weeks later, in May, 2002, authorities in Florida placed the defendant in custody and notified the Connecticut state police of the defendant's apprehension. The defendant waived extradition and was returned to Connecticut.

The defendant was charged with one count of escape in the first degree. After the jury convicted the defendant, the court, on January 31, 2003, sentenced him to a prison term of eight years to run consecutive to the sentence for the felony murder conviction.[1] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied both his motion for a speedy trial and his motion to dismiss on speedy trial grounds.[2] Specifically, he

___

[1] On September 24, 2003, the court modified the sentence to eight years incarceration, to run concurrently with the sentence for the felony murder conviction.

[2] On appeal, the defendant relies on an unsigned transcript of the court's oral decision. "Under such circumstances, in criminal as well as in civil cases, this court may decline to undertake substantive review. . . . This court, however, has the discretion to consider an appeal on its merits despite this procedural irregularity if the transcript contains a sufficiently detailed and concise statement of the trial court's findings." (Citation omitted; inter-

argues that the court improperly (1) determined his status as a pretrial detainee, rather than a sentenced prisoner and (2) calculated excludable time.[3] The state counters by arguing that, even if the defendant was a sentenced prisoner at the time he filed his motion for a speedy trial, he expressly agreed to exclude certain time and, as a result, the 120 day time period set forth in General Statutes § 54-82c had not yet expired. The state's arguments are persuasive.

At the outset, we identify the applicable standard of review. "The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . . Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 669–70, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003).

The following additional facts are necessary for our resolution of this claim. The defendant was arraigned on May 24, 2002. On July 16, 2002, the defendant filed a pro se motion for a speedy trial pursuant to General Statutes § 54-82c.[4] At a hearing held on July 23, 2002,

nal quotation marks omitted.) *State* v. *Nesteriak*, 60 Conn. App. 647, 651 n.6, 760 A.2d 984 (2000). In this case, we exercise our discretion to consider the defendant's appeal on its merits.

[3] In his brief, the defendant argues that the court "committed plain error" in denying his motion to dismiss and also requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Neither the doctrine of plain error nor *Golding* review is necessary for us to review this claim, as the defendant preserved the claim by his motion for a speedy trial.

[4] General Statutes § 54-82c provides in relevant part: "Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, *he shall be brought to trial within one hundred twenty* days after

the court ordered the appointment of a public defender, attorney David Smith, and entered a pro forma not guilty plea. The defendant indicated that he was not waiving his speedy trial motion. The court ordered a continuance and ruled that the time would not be excludable for purposes of the speedy trial motion.

On September 11, 2002, the court held another hearing to address the speedy trial motion. The court, the assistant state's attorney and counsel for the defendant appeared to be unsure as to whether the defendant should be classified as a pretrial detainee or a sentenced prisoner. The court denied the defendant's motion. Counsel for the defendant then requested a continuance of approximately one month to resolve the questions regarding the defendant's status. The court granted that request with the understanding that it would be excludable time. Both the defendant and his counsel agreed to these terms.

On October 30, 2002, the court held a hearing concerning two issues, the defendant's speedy trial motion and his request to proceed pro se. The defendant argued that he was never on parole and that at all relevant times, he was on work release under the supervision of the department of correction. The court found that the defendant failed to satisfy his burden that he was a sentenced prisoner and requested that either the assistant state's attorney or the defendant's standby counsel determine the defendant's exact status. The court denied the defendant's speedy trial motion without prej-

he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. . . ." (Emphasis added.) Pursuant to General Statutes § 54-82d, the failure to comply with § 54-82c results in the loss of jurisdiction by the court and requires a dismissal of the charges.

udice. The court also granted the defendant's request to proceed pro se and appointed standby counsel to be available to assist the defendant with his case.

The court inquired as to a possible starting date for the trial. The clerk stated that a pretrial hearing was scheduled for December 9, 2002. The court noted that an earlier date was necessary, in light of the defendant's motion for a speedy trial. The defendant accepted December 9, 2002, as the pretrial date because "then everybody would have enough time to do everything that needed to be done." The defendant acknowledged on the record that the time from October 30, 2002, until December 9, 2002, would not be counted toward his speedy trial motion and that the trial might not start on December 9, 2002. The court accepted these conditions and scheduled the hearing accordingly.

The defendant filed his motion for a speedy trial on July 16, 2002. Voir dire commenced on December 12, 2002. "For the purpose of the speedy trial rules, commencement of trial means the commencement of the voir dire examination in jury cases and the swearing-in of the first witness in nonjury cases. Practice Book § 956E [now § 43-42]." (Internal quotation marks omitted.) State v. Lacks, 58 Conn. App. 412, 416, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000). Absent any intervening, excludable delays, the defendant's trial should have started on November 13, 2002, 120 days from the filing of his speedy trial motion. One hundred forty-nine days elapsed from the filing of the motion to the start of the defendant's trial. If, however, the court properly found that at least twenty-nine days were excludable from the speedy trial calculation, the court properly denied the defendant's motion, regardless of his status within the correctional system.

"Practice Book § 43-40 (7) expressly provides for the exclusion of time resulting from a continuance granted

by the judicial authority at the personal request of the defendant. The applicable language provides: 'The following periods of time shall be excluded in computing the time within which the trial of a defendant charged by information with a criminal offense must commence pursuant to Section 43-39 . . . (7) *The period of delay resulting from a continuance granted by the judicial authority at the personal request of the defendant.'* Practice Book § 43-40." (Emphasis added.) *State* v. *Jeffreys,* supra, 78 Conn. App. 671.

In *Jeffreys,* we rejected the argument that only requests for a continuance made by the defendant, rather than by his counsel, were excluded properly from a speedy trial calculation. Id. "Absent some indication to the contrary, a court is entitled to rely on counsel's representations on behalf of his or her client." (Internal quotation marks omitted.) Id., 672. We also pointed out that the delays requested by the defendant's counsel were occasioned for *the defendant's benefit.* Id., 673.

In the present case, the defendant, through his counsel, requested and received a continuance from September 11, 2002, through October 15, 2002, a total of thirty-four days. Both the defendant and his attorney consented on the record to this time being excluded from any speedy trial calculation. Additionally, on October 30, 2002, the defendant, acting pro se, agreed to a continuance until December 9, 2002, a total of thirty-nine days. The court did not abuse its discretion in finding that the continuances, requested by the defendant, were excludable from the speedy trial calculations.

Simply by focusing on these two periods of excludable time,[5] which total seventy-three days of excludable

[5] The record reveals that the court classified other periods of time between July 16 and December 12, 2002, as excludable. It is unnecessary, however, for us to recite all of the excludable time because of the seventy-three days that the defendant consented to.

time, it is apparent that the 120 day period had not run by the start of the defendant's trial. Given the seventy-three days of delay occasioned by the defendant, voir dire for the defendant's trial need not have commenced until January, 2003. Voir dire started on December 12, 2002. Accordingly, we conclude that the court properly complied with the speedy trial requirements set forth in § 54-82c and, therefore, properly denied the defendant's motion to dismiss.

## II

The defendant next claims that the court improperly violated the sixth amendment right to a speedy trial. We disagree.

"The sixth amendment guarantee of a speedy trial is a fundamental right made applicable to the states through the fourteenth amendment to the United States constitution. . . . In *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court articulated a balancing test for determining when a defendant's constitutional right to a speedy trial has been violated." (Citation omitted.) *State* v. *Turner*, 252 Conn. 714, 742, 751 A.2d 372 (2000).

"The Supreme Court of the United States and [the Connecticut Supreme Court] have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. . . . A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 56 Conn. App. 98, 102–103, 741 A.2d 337 (1999), cert. denied, 252 Conn. 926, 746 A.2d 790 (2000).

In the present case, the defendant was placed in custody and arraigned in May, 2002. The defendant asserted his right to a speedy trial by way of his motion filed on July 16, 2002. His trial commenced in December, 2002, approximately seven months after his arraignment. "Our courts have not held that any particular length of delay is presumptively prejudicial, but have stated that an extensive delay warrants an inquiry into the other factors of *Barker*. . . . There is no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months." (Citations omitted; internal quotation marks omitted.) *State* v. *Lacks*, supra, 58 Conn. App. 418.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. . . . Our courts have held that [a]lthough nine months is not an overwhelming period of time [to be incarcerated before trial], it is of such length that there is a necessity for inquiry into the other factors that go into the balance." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown*, 40 Conn. App. 483, 488–89, 671 A.2d 1316 (1996), aff'd, 242 Conn. 389, 699 A.2d 943 (1997). Although the delay in the present case was less than the nine months in *Brown*, we will engage in further *Barker* analysis.

As we identified in part I, a significant reason for the delay of the trial was caused by the defendant's requests for continuances. "In examining the reason for the delay, we focus on whether the state was making a deliberate attempt to delay the trial in order to hamper the defense or whether there existed a valid reason . . . [that] should serve to justify appropriate delay." (Internal quotation marks omitted.) *State* v. *Lacks*, supra, 58 Conn. App. 418. In the present case, it was the actions of the defendant, rather than those of the

state, that resulted in the delay of the trial. Accordingly, this factor weighs against the defendant.

"The final *Barker* factor, prejudice to the defendant, is the linchpin of the speedy trial claim. . . . [U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself. . . . The right to a speedy trial is designed (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. . . . In *Barker* . . . the court noted that of the three interests served by the right to speedy trial, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Citation omitted; internal quotation marks omitted.) Id., 419–20.

The defendant's sole claim of prejudice is that he lost his eligibility for parole and is now required to serve a longer sentence as a result of the court's failure to grant his motion to dismiss. We already have concluded that the court properly denied the motion to dismiss. Additionally, we note that the defendant has not claimed that his ability to prepare a defense was impaired. The defendant's claim of prejudice is without merit. On the basis of our consideration of the four *Barker* factors, we conclude that the defendant was not denied his constitutional right to a speedy trial.

III

The defendant's final claim is that the court improperly allowed him to waive his right to counsel without conducting a proper canvass. Specifically, he argues that the court failed to comply with Practice Book § 44-3 (3) and (4) and that the court did not find a voluntary and knowing waiver of his right to counsel. We disagree.

The defendant concedes that this claim is unpreserved and requests review pursuant to both *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine.[6] This claim does not present the truly extraordinary situation where the existence of an obvious error affected the fairness and integrity of judicial proceedings that may undermine public confidence or result in manifest injustice. See, e.g., *State* v. *Izzo*, 82 Conn. App. 285, 295, 843 A.2d 661, cert. denied, 270 Conn. 902, 853 A.2d 521 (2004). Accordingly, we will not engage in plain error review. We will, however, review the defendant's claim under *Golding*.[7] We conclude that the record is adequate for our review and that the defendant's right to counsel is of constitutional magnitude. See *State* v. *Bangulescu*, 80 Conn. App. 26, 38, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003). This claim, however, fails to satisfy *Golding's* third prong as the court's canvass was adequate to conclude that the defendant knowingly and intelligently waived the right to counsel.

[6] Our review of the record reveals that the defendant raised this issue in his postverdict motion for a new trial. We do not believe, however, that this properly preserved the claim for appellate review. See *State* v. *Whipper*, 258 Conn. 229, 244, 780 A.2d 53 (2001), overruled in part on other grounds, *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004).

[7] "Our Supreme Court stated in *Golding* that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Clark*, 69 Conn. App. 41, 46, 794 A.2d 541 (2002).

The following additional facts are necessary for our resolution of the defendant's claim. At the pretrial hearing held on October 30, 2002, the defendant indicated to the court that he preferred to represent himself. The court immediately cautioned that anything said by the defendant could be used against him. The defendant stated that he did not want Smith to represent him or to act as standby counsel. The court responded by informing the defendant that it was his right to represent himself so long as the court was satisfied that the defendant could do so adequately.

The court proceeded to review the defendant's status and informed him that, if convicted, he would likely have to serve life in prison. The court also provided the defendant with information regarding an *Alford* plea,[8] and cautioned him as to the dangers of proceeding pro se.

The defendant again insisted on representing himself. The court canvassed the defendant as to his age, education and experience with legal materials. The defendant replied that he was forty-five years old, attended two years of college and had read legal materials in the past. He also stated that he could read a few books in order to prepare adequately for his trial. The defendant also informed the court that he had performed legal research at the time of his felony murder trial. After hearing the defendant's responses, the court found that he waived his right to counsel and allowed the defendant to represent himself. The court, however, appointed standby counsel. The defendant represented himself during the remainder of the pretrial proceedings and at voir dire. At the conclusion of voir dire, the defendant made an oral motion to be represented by standby counsel, attorney George Flores. The court granted this motion and

---

[8] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Flores represented the defendant for the remainder of the trial.

We first identify the legal principles and standard of review that guide our resolution of this issue. "It is settled law that [b]oth the federal constitution and our state constitution afford a criminal defendant the right to [forgo] the assistance of counsel and to choose instead to represent himself or herself at trial. As a matter of federal constitutional law, the right to self-representation is premised on the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged. . . . The Connecticut constitution is more explicit, stating directly that [i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel. . . .

"Although it may be settled law that a criminal defendant has an absolute right to self-representation, that right is not self-executing. A trial court in this state must satisfy itself that several criteria have been met before a criminal defendant properly may be allowed to waive counsel and proceed pro se. . . . Those criteria include a determination by the court (1) that the defendant is competent to waive counsel, and (2) that his waiver is knowing, intelligent and voluntary." (Internal quotation marks omitted.) *State* v. *Bangulescu,* supra, 80 Conn. App. 41–42; see also *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State* v. *Gethers,* 197 Conn. 369, 376–77, 497 A.2d 408 (1985). Of course, a defendant "need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . ." (Internal quotation marks omitted.) *State* v. *Wolff,* 237 Conn. 633, 654, 678 A.2d 1369 (1996).

In the present case, the defendant challenges only the second criterion, that is, whether his waiver was

knowing, intelligent and voluntary. "A defendant has knowingly and intelligently waived the right to counsel if the trial judge finds that he (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation. . . .

"[T]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . This important decision rests within the discretion of the trial judge. . . . Our task, therefore, is to determine whether the court abused its discretion in allowing the defendant to discharge his counsel and to represent himself." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman*, 83 Conn. App. 672, 685, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004); see also Practice Book § 44-3.

The defendant attacks the validity of the canvass on two grounds, specifically, subsections (3) and (4) of Practice Book § 44-3.[9] The defendant argues that the

[9] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant: (1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad

alleged failure of the court to determine if he compre-
hended the nature of the charges, the range of possible
punishment and any additional facts essential to the
understanding of the case and if he was aware of the
dangers of self-representation was improper. At the out-
set, we have stated that "[w]hile [a] defendant . . .
does not possess a constitutional right to a specifically
formulated canvass . . . [h]is constitutional right is
not violated as long as the court's canvass, whatever
its form, is sufficient to establish [in the court's opinion]
that the defendant's waiver was voluntary and knowing.
. . . *In other words, the court may accept a waiver of
the right to counsel without specifically questioning
a defendant on each of the factors listed in Practice
Book § 961 [now § 44-3] if the record is sufficient to
establish that the waiver is voluntary and knowing.*
. . . [A] record that affirmatively shows that [the defen-
dant] was literate, competent, and understanding, and
that he was voluntarily exercising his informed free
will sufficiently supports a waiver." (Citation omitted;
emphasis added; internal quotation marks omitted.)
*State* v. *Porter*, 76 Conn. App. 477, 496–97, 819 A.2d
909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003).

To be sure, the absence of *any* attempt to canvass
the defendant will render his waiver invalid and require
a reversal by this court. See, e.g., *State* v. *Cohens*, 62
Conn. App. 345, 352, 773 A.2d 363, cert. denied, 256
Conn. 918, 774 A.2d 139 (2001); *State* v. *Myer*, 59 Conn.
App. 301, 302, 756 A.2d 318 (2000); see also *State* v.
*Miller*, 55 Conn. App. 185, 187–89, 738 A.2d 1142 (1999)
(canvass consisting of whether defendant wanted coun-
sel or wanted to proceed without counsel insufficient
to show knowing, intelligent and voluntary waiver). In
the present case, however, the court expressly warned
the defendant regarding the dangers of proceeding pro

understanding of the case; and (4) Has been made aware of the dangers
and disadvantages of self-representation."

se. The court informed the defendant: "[The court] generally recommend[s] that people let their attorneys do their talking for them, because if you say something that could hurt you, [the assistant state's attorney is] going to be the first one to write it down or get a copy of it and use it against you." The court also pointed out that Smith was attempting to prevent the defendant from receiving a consecutive sentence, which, when combined with his prior sentence, potentially would result in the defendant spending the rest of his life in prison. The court also discussed the benefits of an *Alford* plea with the defendant.

It is clear that the court cautioned the defendant about the dangers of representing himself and discussed the range of possible punishments. The only remaining issue is whether the absence of any discussion regarding the elements of escape in the first degree results in an abuse of discretion. We conclude that it does not.

We reiterate that the defendant is not entitled to a specifically formulated canvass or specific questions regarding each of the § 44-3 factors. *State* v. *Taylor*, 63 Conn. App. 386, 402, 776 A.2d 1154, cert. denied, 257 Conn. 907, 777 A.2d 687, cert. denied, 534 U.S. 978, 122 S. Ct. 406, 151 L. Ed. 2d 308 (2001); see also *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996); *State* v. *Porter*, supra, 76 Conn. App. 496–97. Furthermore, our Supreme Court expressly has stated that there is no requirement that the "defendant must be specifically informed of the particular elements of the crimes charged before being permitted to waive counsel and proceed pro se. . . . A discussion of the elements of the charged crimes would be helpful, and may be one of the factors involved in the ultimate determination of whether the defendant understands the nature of the charges against him. A description of the elements of the crime is not, however, a sine qua non of the defendant's constitutional rights in this context. Indeed, in

our cases we have approved of a defendant's assertion of the right to proceed pro se where the record did not affirmatively disclose that the trial court explained the specific elements of the crimes charged to the defendant as long as the defendant understood the nature of the crimes charged." (Citation omitted.) *State* v. *Wolff*, supra, 237 Conn. 655–56. Additionally, "a trial court may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail." (Internal quotation marks omitted.) *State* v. *Porter*, supra, 76 Conn. App. 498.

We conclude that the court did not abuse its discretion in accepting the defendant's request to waive counsel. The defendant at all times knew that, while at the halfway house, he was under the authority of the department of correction and was required to follow the rules and regulations of the halfway house. Furthermore, the court advised the defendant to retain Smith, whom he characterized as an "outstanding lawyer." The record, therefore, indicates that the trial court could presume that Smith informed the defendant as to the elements of the crime charged.

In sum, our review of the record reveals that the court did not abuse its discretion when it decided that the defendant's decision to waive his right to counsel was intelligent, knowing and voluntary. We determine that the court's canvass was adequate to support such a determination. Accordingly, the defendant's claim fails to satisfy *Golding*'s third prong and as such, it must fail.

The judgment is affirmed.

In this opinion the other judges concurred.