## ALEXANDER LACKS *v.* COMMISSIONER OF CORRECTION
### (AC 24533)

Dranginis, Flynn and Mihalakos, Js.

Argued October 18, 2004—officially released February 1, 2005

*Alice Osedach,* assistant public defender, for the appellant (petitioner).

*Christopher T. Godialis,* assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* state's attorney, and *Linda N. Howe,* senior assistant state's attorney, for the appellee (respondent).

MIHALAKOS, J. The petitioner, Alexander Lacks, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to prove his claim of ineffective assistance of counsel. Specifically, the petitioner claims that he was denied effective assistance because his trial counsel failed (1) to object to improper statements made by the prosecutor during closing arguments to the jury, (2) to explain the charges and any potential defenses to the petitioner and (3) to advise the petitioner of the potential consequences when a witness invokes his fifth amendment privilege against self-incrimination. In addition, the petitioner contends that the habeas court improperly concluded that the trial court did not deny him due process of law. His claims focused (1) on the court's refusal to grant him the same relief given to his codefendant and (2) on the prosecutor's improper remarks during closing arguments. We affirm the judgment of the habeas court.

In the petitioner's direct appeal, this court set forth the factual background as follows: "On the evening of October 24, 1994, Jose Marrero, Amy Cobain and Devon McFarlane went to Louis Hood's apartment on Frank Street in New Haven. The quartet then proceeded to a nearby convenience store on Arch Street, where Marrero sought to obtain change for a $100 bill. Three black males, who were later identified as the [petitioner], Eaker McClendon and Leotis Payne, followed them.

"McFarlane did not enter the store with the others. After Marrero obtained his change, the quartet started walking back to Hood's apartment. The [petitioner], McClendon and Payne were still following them. Suddenly, Payne approached Cobain, put a gun to her head and demanded money. The [petitioner] and McClendon

repeatedly urged Payne to 'hurry up' and get the money. Hood pushed Cobain out of the way and urged her to run, which she did. Payne then put the gun to Marrero's head, went through his pockets and took his money. Then, as Payne began to pull the trigger of the gun, Hood pushed Marrero out of the way and Payne shot Hood in the chest. Thereafter, the [petitioner], McClendon and Payne fled.

"Officer Ricardo Rodriguez of the New Haven police department arrived at the scene and observed Hood on the sidewalk. Hood was later pronounced dead from the bullet wound, from which a .25 caliber bullet was extracted. Later, Marrero identified the [petitioner], McClendon and Payne at the police station as the perpetrators of the crime, and Cobain and McFarlane indicated that Payne was the shooter.

"On October 27, 1994, the police entered the apartment of the [petitioner's] girlfriend by use of force, found the [petitioner] and arrested him. McClendon had fled out the back window and subsequently was apprehended. At trial, the [petitioner] testified that on the night of the shooting he was unarmed and unaware of Payne's intentions or that Payne possessed a gun. He testified further that he did not see Payne or any other individual rob anyone and ran because he was fearful of gang members." State v. Lacks, 58 Conn. App. 412, 414–15, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000). The jury found the petitioner guilty of felony murder in violation of General Statutes § 53a-54c and robbery in the first degree in violation of General Statutes § 53a-134. State v. Lacks, supra, 413.

Following his unsuccessful appeal, the petitioner filed his petition for a writ of habeas corpus. By memorandum of decision, filed July 2, 2003, the court denied the petition, finding that the petitioner failed to prove both that trial counsel had been ineffective and that

the petitioner had been deprived of his due process rights. Certification to appeal was granted, and this appeal followed.

## I

The petitioner makes three ineffective assistance of counsel claims. For the purposes of this appeal, we will address them together. "Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 797, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation

marks omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 798. "[T]he petitioner must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Alvarez* v. *Commissioner of Correction*, 79 Conn. App. 847, 849, 832 A.2d 102, cert. denied, 266 Conn. 933, 837 A.2d 804 (2003).

We recognize that "[c]ompetent representation is not to be equated with perfection. The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 798. "In reviewing a claim of ineffective assistance of trial counsel, we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; it is the petitioner's burden to overcome the presumption that his attorney's actions or inactions were not, in fact, sound trial strategy. . . . We also must make every effort to evaluate the challenged conduct from counsel's perspective at the time." (Internal quotation marks omitted.) *Alvarez* v. *Commissioner of Correction*, supra, 79 Conn. 849. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 798–99.

With those principles in mind, we now turn to the petitioner's claims. Additional facts will be set forth as appropriate.

## A

First, the petitioner claims that trial counsel was inadequate because he failed to object to improper statements made by the prosecutor during closing arguments. The petitioner contends that trial counsel's failure to object to those improper remarks deprived him of a fair trial and jeopardized his appeal. We disagree.

It is well settled that in order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove both prongs of the *Strickland* test. "A reviewing court [therefore] can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 70 Conn. App. 452, 456, 800 A.2d 1194, cert. denied, 261 Conn. 921, 806 A.2d 1061 (2002). This court determined, in the petitioner's direct appeal, that the prosecutor's comments were improper. *State* v. *Lacks*, supra, 58 Conn. App. 422. We also determined, however, that the misconduct was not so egregious as to deprive the petitioner of a fair trial. Id., 424. Having already decided that issue on direct appeal, we conclude that the petitioner cannot prove that he was prejudiced by trial counsel's failure to object to the improper comments. The petitioner's first ineffective assistance of counsel claim must fail.

## B

Second, the petitioner claims that trial counsel was deficient in that he failed to advise the petitioner adequately of the charges and potential defenses. The petitioner claims that the failure to explain the charges affected his right to a fair trial. We disagree.

Our review requires us to indulge in the presumption that trial counsel met the standard of care required for effective assistance of counsel. The burden is on the

petitioner to overcome that presumption. In this case, the petitioner testified that he did not understand the charges against him and the potential defenses to felony murder. The petitioner's trial counsel also testified, explaining that despite several attempts to explain the elements of felony murder, he believed that the petitioner did not understand the charges. The habeas court found that trial counsel did all that he could to explain the nature of the charges. We agree. The petitioner, however, also has failed to prove that the result of the proceedings would have been different if trial counsel had been able to explain fully the charges to the petitioner. We therefore conclude that the petitioner has failed to meet his burden of proof and determine that his second ineffective assistance of counsel claim must fail.

## C

The petitioner also claims that trial counsel was ineffective because counsel failed to advise him about the consequences of a witness' decision to invoke his fifth amendment privilege against self-incrimination. The petitioner, however, has failed to brief the issue adequately. "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Moulton Bros., Inc.* v. *Lemieux,* 74 Conn. App. 357, 363, 812 A.2d 129 (2002).

## II

In addition to his ineffective assistance of counsel claims, the petitioner asserts that his due process rights

were violated by our Supreme Court's refusal to grant him the same remedy as it granted to his codefendant, Payne, on appeal. The petitioner claims that because Payne was granted a new trial after a successful direct appeal, on the basis of a prosecutorial misconduct claim, fundamental fairness requires this court to exercise its supervisory powers to grant him the same relief. We disagree.

The petitioner's case was tried after Payne was convicted of felony murder, robbery in the first degree and several other offenses. See *State* v. *Payne*, 63 Conn. App. 583, 777 A.2d 731 (2001), rev'd, 260 Conn. 446, 797 A.2d 1088 (2002). Nevertheless, the petitioner's appeal was heard first. This court affirmed the petitioner's conviction, and our Supreme Court denied his petition for certification to appeal. See *State* v. *Lacks*, 254 Conn. 919, 759 A.2d 1026 (2000). Payne's conviction also was upheld by this court. *State* v. *Payne*, supra, 596. Unlike the result in the petitioner's attempt to procure certification to appeal, however, our Supreme Court granted Payne's petition for certification to appeal and, using its supervisory authority, ordered that Payne receive a new trial. See *State* v. *Payne*, 260 Conn. 446, 797 A.2d 1088 (2002).

The petitioner asserts that the comments made by the prosecutor during his trial were nearly identical to the improper comments made by the same prosecutor during Payne's trial. Because of those similarities, the petitioner claims that fundamental fairness demands that this court use its supervisory authority to grant him a new trial. To support that proposition, the petitioner relies on *State* v. *Pelletier*, 196 Conn. 32, 490 A.2d 515 (1985), in which the Supreme Court reversed the judgment of conviction on the basis of an unpreserved claim of prosecutorial misconduct because the court had done so in the codefendant's case. In *Pelletier*, however, the codefendants were tried together. Id., 36 (*Shea, J.*,

concurring). Here, the petitioner and Payne were tried separately. In this case, even though the same prosecutor prosecuted both cases and the same judge presided over both trials, they were convicted by different juries. Moreover, the petitioner, himself, admits that there were several additional instances of misconduct that occurred during Payne's trial, which were objected to by Payne's attorney.

The petitioner urges this court to exercise its supervisory powers to grant him a new trial. "[O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle." (Internal quotation marks omitted.) *State* v. *Pouncey*, 241 Conn. 802, 813, 699 A.2d 901 (1997). "It is true that [e]ven when prosecutorial misconduct is not so egregious as to implicate the defendant's [due process] right to a fair trial, an appellate court may invoke its supervisory authority [over the administration of justice] to reverse a criminal conviction when the prosecutor deliberately engages in conduct that he or she knows, or ought to know, is improper. . . . Such a sanction generally is appropriate, however, only when the [prosecutor's] conduct is so offensive to the sound administration of justice that only a new trial can effectively prevent such assaults on the integrity of the tribunal." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 530, 853 A.2d 105 (2004). This court already has determined in the petitioner's direct appeal that the prosecutor's remarks were not so egregious or deliberate as to require that extraordinary remedy. *State* v. *Lacks*, supra, 58 Conn. App. 424. We conclude, therefore, that the petitioner's claim has no merit.

### III

Finally, the petitioner asserts a claim of prosecutorial misconduct on the basis of several improper remarks that were made during closing arguments. The peti-

tioner raised the same claim on direct appeal, and this court determined that although the prosecutor's remarks were improper, they did not deprive the petitioner of his right to a fair trial. Id. The petitioner, however, maintains that the habeas court should have conducted an independent determination of whether he was deprived of a fair trial instead of adopting the reasoning of this court. Furthermore, the petitioner suggests that his unpreserved prosecutorial misconduct claim should be subjected to the more current, less stringent standard of review using the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). See *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004) (if prosecutorial misconduct occurs, reviewing court must apply *Williams* factors to entire trial). We disagree.

There is nothing that convinces us that the habeas court's reliance on our opinion in the petitioner's direct appeal was incorrect. We therefore dismiss the petitioner's due process claim.

The judgment is affirmed.

In this opinion the other judges concurred.